UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**UNITED STATES OF AMERICA**

**CASE NO. 5:21-MJ-00015-LLK**

vs.

**CLAYTON RAY MULLINS**

### MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR PRETRIAL DETENTION
*-Electronically Filed-*

The United States of America, by and through counsel, the Acting United States Attorney for the Western District of Kentucky, respectfully submits this memorandum in support of its motion that the defendant, Clayton Ray Mullins, be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2). The Court should order the defendant detained pursuant to 18 U.S.C. § 3142(e) because there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required and ensure the safety of any other person and the community.

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### Factual Background

1. **The Attack on the United States Capitol on January 6, 2021.**

The United States Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access

inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence, who is also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, several individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. During the course of the violent protest, several law enforcement officers were assaulted and injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol. The defendant, as detailed below, is charged with two instances of assault, as well as other criminal violations.

2. **Clayton Mullins' Criminal Conduct**

   a. **Assault on Law Enforcement Officer at Senate Wing Entrance**

Between 4:00 p.m. and 5:00 p.m., officer A.W. walked through the interior tunnel of the United States Capital Building ("USCB") and assumed a post in an archway that provided access to the building's lower west terrace. The approximate location of A.W. is denoted by the red circle.



Around 2:00 p.m., a large crowd of violent protestors overran uniformed officers who were attempting to secure a perimeter around the USCB. Some of the protestors were using pepper spray on the officers in an attempt to get past a barricade. A Twitter user posted a video of the mob rushing the officers and spraying them with pepper spray. Mullins can be seen advancing on the barricade, attempting to push past the permitter. He appears to have been inadvertently sprayed with pepper spray by another protestor causing him to pause. Shortly thereafter, officers were forced to retreat up the stairs of the USCB to attempt to secure the building from the violent advance.

At approximately 4:27 p.m., the violent protestors began assaulting police officers who had positioned themselves in the archway overlooking the west terrace of the USCB. Officer A.W. had his helmet ripped off by another rioter, Jeffrey Sabol. Officer A.W. was knocked to the ground and his baton was ripped from his hands. Officer B.M., who was in close proximity to officer A.W., was drug into the crowd and over the top of officer A.W. Officer B.M. was drug

down the steps and assaulted with flag poles and a baton. The beating of officer B.M. was captured and posted by various national media outlets and Twitter users. Another officer, Officer C.M. was pummeled by violent protestors as he tried to secure the archway and his fellow officers.

Officer A.W. was subsequently pulled into the crowd. Video and still images posted to national media outlets and individual social media accounts show Mullins reaching over a railing and violently pulling officer A.W.'s leg, dragging him towards the crowd of violent protestors who were already assaulting officer B.M. Officer C.M.'s body camera captures officers attempting to free Officer A.W. from Mullins' grip.







Officer A.W. recalled being pulled into the crowd where he was struck with poles and batons.  He also recalls that his gas mask was ripped off and he was 'maced.'   At some point

during the assault, Officer A.W. was assisted by a protestor and helped back to his feet where he was able to make it to the tunnel. Officer A.W. suffered a laceration to his head that required 2 staples to close. He also suffered a bruised elbow in the assault.

As can be clearly observed, the defendant is part of a mob of individuals attacking law enforcement officers who were trying to prevent the unruly crowd from entering the U.S. Capitol, which was closed to the public that day. United States Capitol Police officers are designated as officers of the United States under 18 U.S.C. 1114. Mullins can clearly be observed wearing a dark colored jacket, black gloves, and light blue jeans. His hairstyle and face are clearly visible in the images and videos that captured his criminal conduct.

### 3. Procedural History

On February 13, 2021, Mullins was charged by complaint with

1) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1);

2) Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);

3) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. 1752(a)(1);

4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

5) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(4); and

6) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40

U.S.C. § 5104(e)(2)(F).

On February 25, 2021, at the defendant's initial appearance, the government orally moved for the defendant's detention pending trial. The Court set this matter for a detention hearing on Friday, February 26, 2021, at 2:30 p.m.

## ARGUMENT

There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. §3142(g). In consideration of these factors, the government respectfully submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community.

### Nature and Circumstances of the Offenses Charged

During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol. Additionally, the violent crowd encouraged others in the crowd to work together to overwhelm law enforcement and gain unlawful entry into the U.S. Capitol.

What is extremely troubling about the defendant's conduct is both the severity of his actions and the escalation of his violent assaults. As noted above, shortly after 2:00 p.m. on January 6, 2021, the defendant joined a large mob that substantially outnumbered law enforcement at a

perimeter set up on the Capitol grounds. The defendant participated in overrunning officers who were forced to retreat up the Capitol steps. The defendant then pushed forward and approximately 2 and a half hours later he ended up with a group of people that physically attacked law enforcement in an effort to gain entry to the building. The law enforcement officers were in full uniform with the word "police" clearly visible. At approximately 4:27 p.m., the defendant is observed physically grabbing a law enforcement officer and pulling him towards the violent mob where another officer was already being attacked. The defendant engaged in a 'tug of war' with the officer's leg, with other officers who were trying to rescue him. The officer was eventually dragged down the stairs where his mask was ripped off, he was maced, and assaulted with poles. The assault on the officer resulted in a head injury that required staples to close. The defendant's assaultive behavior allowed the violent mob to assault this particular officer and others. Further, his behavior in part allowed the large mob of individuals to successfully breach the U.S. Capitol, putting additional law enforcement officers and members and staff of Congress at grave risk. The defendant's actions allowed other rioters to commit multiple other criminal acts inside the building.

The defendant's actions were violent, criminal, and represented a further dangerous escalation aimed at allowing other violent rioters to unlawfully enter the U.S. Capitol. Because of his direct actions, an officer was injured and had to seek medical treatment for his injuries.

### Weight of the Evidence Against the Defendants

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is also quite strong and compelling. As noted above, the defendant was observed on police body worn cameras participating in the

attack of law enforcement officers. Additionally, social media videos capture the defendant attempting to drag the officer into the violent mob. The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

### Defendants' History and Characteristics

The government recognizes that the defendant does not have any adult convictions, other than an astonishing driving record. However, the defendant's actions, as demonstrated by his apparent willingness to engage in the assaultive behavior as part of a violent mob and specifically target law enforcement officers should give this Court great concern about the danger he would pose to the community, if released.

### Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct aimed to stop the functioning of the United States government, specifically to derail the certification of the electoral process, a cornerstone of our democracy. The danger the defendant caused by assisting the violent mob cannot be understated. The defendant was a spoke in the wheel that caused the historic events of January 6, 2021, and he is thus a danger to our society and a threat to the peaceful functioning of our community.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders and abide by appropriate release conditions.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court grant the government's motion to detain the defendant pending trial.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

*/s/ Leigh Ann Dycus*
Leigh Ann Dycus
Assistant U.S. Attorney
501 Broadway, Suite B29
Paducah, Kentucky 42001
270-816-3354
leigh.ann.dycus@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for defendant.

*/s/ Leigh Ann Dycus*
Leigh Ann Dycus
Assistant U.S. Attorney